UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                   DECISION AND ORDER
v.                                               00-CR-189A

JAMES CHARLES KOPP,

                      Defendant.

---

## INTRODUCTION

Currently before the Court is defendant James Charles Kopp's motion for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The defendant asserts that a new trial is warranted because the jury's verdict was not unanimous. First, defendant asserts that Juror #4's hesitation and emotional state when responding during the polling of the jury established that she did not agree with the verdict and that the Court should therefore have taken remedial action at that time. Second, the defendant alleges, based on statements made by Juror #4 following the trial, that Juror #4 was intimidated by other jurors. In the alternative, the defendant seeks an evidentiary hearing at which to question Juror #4 and other jurors regarding the jury's deliberations.

For the reasons stated, the Court denies defendant's motion for a new trial.

## BACKGROUND

On January 25, 2007, following a seven-day trial, the jury advised the Court that it had reached a unanimous verdict. The verdict was guilty as to both counts of the indictment. The defendant requested that the jury be polled. The Court directed the courtroom deputy to poll the jury. When polled, Juror #4 had difficulty providing an audible answer. The Court advised the juror, "Ma'am, I can't hear you. You have to answer the question." Item No. 296 at 6. The juror then answered "yes," her verdict agreed with the verdict reported by the foreperson. Id. The rest of the jurors also answered that their individual verdicts agreed with the verdict reported by the foreperson, and the Court accepted the unanimous verdict.

Following the polling and dismissal of the jury, the defendant made an observation on the record about the manner in which he perceived Juror #4 answered the poll. He stated, "juror 4 has taken quite a while before she answered, and her answer was barely audible and she began weeping and didn't cease weeping until she left the room." Id. at 9. He also stated that "juror 7, the foreperson, basically began weeping at the end of the polling and she didn't cease weeping until she left the room." Id.

Following discharge, Juror #4 contacted stand-by counsel and had a conversation with him regarding the verdict. Juror #4 also was interviewed by Buffalo News reporter Michael Bebee for an article published February 5, 2007.

In addition, Juror #4 wrote several of the other jurors a letter. Finally, on May 3, 2007, the Court received a letter from Juror #4.[1]

Juror #4, in the news article and in her letters, states that she is upset over the "control" she felt under from the law and the lack of discussion by the jury on some points. She does not indicate that she was influenced or affected by any external information or source, or that she was in anyway physically threatened by any of her fellow jurors or by anyone else during the deliberations. Rather, Juror #4 complains that she "had to follow the law," and could not consider a justification defense. She also complains that the jury answered the questions on the verdict form with little discussion.

## DISCUSSION

**1.    *Verdict was Unanimous***

In Andres v. United States, 333 U.S. 740, 748 (1948), the Supreme Court held that "[u]nanimity in jury verdicts is required where the Sixth and Seventh Amendments apply." Rule 31(a) of the Federal Rules of Criminal Procedure provides that "[t]he verdict shall be unanimous." Rule 31(d) provides for polling of the jury to ensure that each member agrees with the verdict and to discover possible coercion. United States v. Spitz, 696 F.2d 916, 917 (11th Cir.

---

[1]    The Court provided counsel with a copy of the letter and shall make the original part of the record.

1983) (citations omitted).  The method of conducting the jury poll is left to the judge's discretion.  <u>United States v. Gambino</u>, 951 F.2d 498, 501 (2d Cir. 1991) (citations omitted).  If a juror's response during polling is ambiguous or indicates uncertainty, then the court must take remedial action.  <u>United States v. Morris</u>, 612 F.2d 483, 489 (10th Cir. 1979).

The record in this case supports a finding that the verdict was unanimous.  As stated above, the transcript states that when Juror #4 was asked whether her verdict was the same as the verdict reported by the foreperson, she responded, "yes," an unambiguous response.  That is also the Court's recollection of what occurred.

Defendant argues that Juror #4's delayed response and emotional state (she was weeping) during the polling required the Court to make further inquiry of Juror #4.  The Court disagrees.  Juror #4's verbal response was, on its face, unambiguous.  Thus, the Court had no duty to make further inquiry.  <u>See United States v. McClintock</u>, 748 F.2d 1278, 1293 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 822 (1985).  The court in <u>United States v. Musto</u>, 540 F. Supp. 318 (D. N.J. 1982), faced a similar set of circumstances and held:

> Here, the poll did not reveal the juror's uncertainty with the verdict. Although juror # 4 made certain gesticulations at the time she indicated her agreement with the verdict, the court cannot conclude that these gestures indicated uncertainty with the decision. The court cannot be required to go beyond a juror's verbal response to a poll and determine whether the juror's body language is consistent with the stated response. The judge should be able to accept a

> juror's response to a poll at face value. If the response itself indicates uncertainty with the verdict, then the court should take remedial action. Thus, where a juror responds to a poll by saying "Yes, with a question mark[,]" or "It's my verdict but I'm still in doubt[,]" or "I voted guilty to man, but not to God[,]" then the court has an objective statement of the juror's uncertainty. But to require the court to evaluate the juror's posture, body movements, and other gestures is to impose a standard incapable of application.
>
> Furthermore, agreement with a verdict does not require pleasure in its announcement. A juror may display unhappiness with a verdict, or reluctance or sadness in its rendition, but still believe in its correctness. A juror may cry over a verdict in which he or she has participated without in any way evidencing disagreement with it. Few jurors relish a finding of guilt. To suggest that tears, a shrug of the shoulders or other body movement should negate or place in question an answer of a juror is to impose upon a court powers of perception which it does not possess and should not attempt to employ. The validity of a poll should depend on what the court hears and not what it sees.

Id. at 342 (citations and footnote omitted). The Court agrees with the Musto court's analysis.

In sum, the Court finds, based on all the facts and circumstances present here, that the verdict in this case was unanimous and that no further inquiry by the Court was required. Thus, defendant's motion for a new trial on the grounds of a nonunanimous verdict must be denied.

2.   *The Verdict Cannot be Impeached by a Juror*

The defendant also seeks a new trial based on Juror #4's statements following the trial regarding the jury deliberation process and the verdict.

Alternatively, the defendant seeks an evidentiary hearing to make further inquiry into the jury's verdict and deliberation process.

The Supreme Court has long adhered to the general rule that a juror is incompetent to impeach his or her verdict.  See, e.g., Mattox v. United States, 146 U.S. 140, 149 (1892).  The necessity for such a rule, which originated in the common law, was explained in McDonald v. Pless, 238 U.S. 264 (1915):

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation-to the destruction of all frankness and freedom of discussion and conference.

Id. at 267-268.  This holding was codified in Rule 606(b) of the Federal Rules of Evidence which expressly bars juror testimony on three subjects: (1) "any matter or statement occurring during the course of the jury's deliberations;" (2) "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment;" and (3) "the juror's mental processes in connection therewith."  Thus, the statements of Juror #4 to stand-by counsel or to the Buffalo News or in her letters are not admissible for the purpose of impeaching the verdict because the statements relate to her thought

6

process during deliberations and the jury deliberation process.

Intrajury influences on the verdict cannot disturb the finality of the verdict. "[A] court will not inquire into the jury's deliberative process, including arguments, statements, discussions, mental and emotional reactions, and votes, in the absence of external influence." United States v. Ford, 840 F. 2d 460, 465 (7th Cir. 1988); see also United States v. Briggs, 291 F.3d 958, 963-64 (7th Cir.), cert. denied, 537 U.S. 985 (2002)  (fact that juror after trial expressed she was unhappy with deliberative process did not warrant a hearing or new trial); United States v. Gonzales, 227 F.3d 520, 525 (6th Cir. 2000) (juror statements that he felt he was only person who did not think defendant was guilty and his "gut" feeling that defendant did make a mistake but not intentionally, was not admissible to support motion for new trial); United States v. Hockridge, 573 F.2d 752, 757-59 (2d Cir. 1978), cert. denied, 439 U.S. 821 (1978) (statements by juror that she felt like she was railroaded and she did not believe there was sufficient evidence were not competent to impeach verdict).

Nor does the fact that a juror may be having second thoughts about the verdict warrant a new trial if there is no claim of external influence on the jury. United States v. Miller, 806 F.2d 223, 225 (10th Cir. 1986) (no new trial warranted although juror stated after trial to minister that she was unsure of defendant's guilt).  "Jurors may, at times, feel sorry for a defendant even though they voted to convict the defendant of the crime charged.  The fact of the former, however,

does not in any wise vitiate the latter." Id. (Internal quotations and citation omitted); see also United States v. Sjeklocha, 843 F.2d 485, 487-88 (11th Cir. 1988) (court erred in considering newspaper article in which foreman was quoted that he wanted to change his vote).

Here, there is no claim of external influence on the jury. Thus, no further inquiry into the verdict is permitted.

Nor is any type of evidentiary hearing required. A party seeking a post-verdict jury evidentiary hearing must come forward with "clear, strong and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred[.]" United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989) (internal quotations and citation omitted). Defendant has failed to make such a showing.

## CONCLUSION

For the reasons stated, the Court denies defendant's motion for a new trial. Sentencing shall be held as scheduled on June 19, 2007 at 12:30 p.m.

SO ORDERED.

                                          s/ *Richard J. Arcara*
                                          HONORABLE RICHARD J. ARCARA
                                          CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT

DATED: May 23, 2007