UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===============================================

JAMES CHARLES KOPP, 11761-055,

                        Petitioner,

                                                    **DECISION AND ORDER**
                                                       10-CV-871A
            v.                                         00-CR-189A

UNITED STATES OF AMERICA,

                        Respondent.

===============================================

## I.      INTRODUCTION

Pending before the Court is a motion by petitioner James Kopp to vacate

his sentence pursuant to 28 U.S.C. § 2255.  In support of his motion, petitioner

submits 23 grounds for relief with separate headings for each.  Petitioner,

however, raised these arguments verbatim or in substance in his direct appeal to

the United States Court of Appeals for the Second Circuit, which considered but

rejected them and affirmed petitioner's conviction.  *See generally U.S. v. Kopp*,

562 F.3d 141 (2d Cir. 2009).  Additionally, nearly all of the arguments raised here

relate in some way to petitioner's central desire to present a justification defense

to the charges against him.  The Second Circuit held explicitly on appeal "that the

evidence presented in this case was wholly insufficient to support either a

'necessity' or 'defense of others' justification defense under any reasonable

articulation."  *Kopp*, 562 F.3d at 145 (citations omitted).  Respondent opposes the

pending motion precisely because petitioner has not raised any substantive argument that the Second Circuit did not consider already.

The Court has deemed the motion submitted on papers pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.  For the reasons below, the Court denies the motion.

## II.   BACKGROUND

This case concerned petitioner's fatal shooting of Dr. Barnett Slepian on October 23, 1998.  Dr. Slepian was a Buffalo-area physician who performed abortions among other gynecological services.  On October 17, 2000, respondent filed a two-count indictment against petitioner.  Count One charged petitioner with intentionally injuring, intimidating, and interfering with Dr. Slepian because he provided reproductive health services, in violation of 18 U.S.C. § 248(a)(1). Count One also specified that Dr. Slepian's death resulted from petitioner's conduct, in violation of 18 U.S.C. § 248(b).  Count Two charged petitioner with using a firearm to commit a crime of violence and causing a murder in the course of that conduct, in violation of 18 U.S.C. §§ 924(c) and (j)(1).

Of the many pretrial issues that arose, the issue of attorney conflict of interest warrants a brief mention.  As is well documented in the record, petitioner was represented by several attorneys during pretrial proceedings.  These attorneys wanted to mount a standard defense that would put respondent to its proof with respect to all of the elements of the two counts in the indictment.  That

is, petitioner's retained and assigned attorneys wanted to challenge respondent's

proof that petitioner shot Dr. Slepian as described in the indictment.  This strategy

conflicted with petitioner's wishes.  Petitioner wanted to mount an ideological

defense of justification.  As petitioner explains in his motion papers, "[r]egardless

of my chances of being acquitted through a traditional 'I didn't do it' defense, I

was uncomfortable with mounting such a defense.  I did not want to try to 'get off'

by telling a lie about what I believe to be a morally defensible and correct act."

(Dkt. No. 385 at 15.)  Accordingly, petitioner sought Court permission to be

represented by Bruce Barket ("Barket"), an attorney who was sympathetic to

petitioner's ideology and who was willing to present his preferred justification

defense at trial.  Petitioner wanted Barket's representation even though Barket

simultaneously was representing Dennis Malvasi ("Malvasi") and Loretta Marra

("Marra") on charges that they obstructed justice by harboring petitioner and

aiding and abetting his fugitive status.

        The Court ultimately refused to grant petitioner permission to have Barket

represent him.  Affirming a prior decision and order by Magistrate Judge Hugh B.

Scott, the Court held that Barket's attempt to represent petitioner, Malvasi, and

Marra created a conflict of interest that could not be waived.  With respect to

actual conflicts of interest, petitioner abandoned plans to fight extradition from

France and to mount a standard defense against his charges in large part to

obtain a more lenient prosecution of Marra.  Marra lost one opportunity to obtain

3

a favorable plea arrangement because of interference from Barket's simultaneous representation. At the same time, Barket arranged for petitioner to confess his role in the shooting to the media for the primary purpose of helping Malvasi and Marra. As for potential conflicts of interest, the Court found that any eventual trial of petitioner would force Barket to compromise his advocacy for at least one of his clients in some way. Simply put, Barket would need Marra either as a character witness or as part of a justification defense, though that would jeopardize Marra's plea negotiations. Once the Court denied petitioner his preferred counsel, he chose to proceed *pro se*.

The Court conducted petitioner's jury trial in January 2007. On January 25, 2007, the jury convicted petitioner on both counts in the indictment. On June 19, 2007, the Court sentenced petitioner to life imprisonment on Count One and a consecutive term of 10 years of imprisonment on Count Two.

On June 27, 2007, petitioner filed a notice of appeal with the Second Circuit to challenge his conviction. The Second Circuit appointed counsel for petitioner but also permitted him to submit his own briefing in addition to any briefing from counsel. Through their combined briefing, petitioner and his appellate counsel raised the following issues for the Second Circuit's consideration:

      1.     Petitioner's statements to the media should have been suppressed;

2.     If not suppressed then petitioner's statements should have been presented at trial in unredacted form;

3.     Petitioner should have been allowed to present a justification defense and to present evidence that he did not intend to kill Dr. Slepian;

4.     Petitioner's due process rights were violated when he was prohibited from submitting evidence that would support a lesser included offense to murder;

5.     Petitioner's equal protection rights were violated because a similarly situated defendant would have been allowed to present a justification defense;

6.     Petitioner was prejudiced by respondent's presentation of a fraudulent "shooter's view" photograph of Dr. Slepian's house;

7.     Respondent improperly asked the jury to infer intent to kill on the basis of false evidence;

8.     Petitioner was prejudiced by a tardy ruling on a motion in limine by respondent to redact statements that petitioner made to the media;

9.     Petitioner was prejudiced by improper suppression of an exculpatory autopsy diagram;

5

10. Petitioner was prejudiced by disqualification of his preferred counsel;

11. Petitioner was prejudiced by a jury verdict that was not unanimous; and

12. The statute forming the basis of Count One, 18 U.S.C. § 248, is unconstitutional or a legal nullity.

The Second Circuit affirmed petitioner's conviction in a decision dated April 6, 2009. Although the Second Circuit addressed only the arguments from petitioner "that warrant detailed discussion," *Kopp*, 562 F.3d at 143, it acknowledged that petitioner raised "at least 11 points in this appeal, some of which are presented in a brief filed by his counsel and some of which are contained in a brief he filed *pro se*." *Id.* at 142–43. More importantly, the Second Circuit concluded that "we have considered all of [petitioner's] argument on this appeal and find them to be without merit." *Id.* at 145. With respect to the issues that it did address in detail, the Second Circuit rejected petitioner's arguments about his motion to suppress his statements to the media. The Second Circuit also rejected petitioner's argument that his statements should have been presented to the jury in unredacted form because they would have helped establish his justification defense. The Second Circuit explained that 18 U.S.C. § 248(a)(1) "requires only that [petitioner] have acted with intent to *injure* Dr.

Slepian *because* he had provided reproductive health services." *Id.* at 144.  As a result, according to the Second Circuit, petitioner's argument that he did not intend to kill Dr. Slepian was irrelevant.  Finally, the Second Circuit rejected petitioner's argument that he should have been allowed to present a justification defense.  The Second Circuit questioned whether 18 U.S.C. § 248 permitted a justification defense.  *Id.* at 144–45.  Alternatively, the Second Circuit decided that, even if a justification defense were technically permissible under Section 248, "the evidence presented in this case was wholly insufficient to support either a 'necessity' or 'defense of others' justification defense under any reasonable articulation."  *Id.* at 145.

Petitioner filed the pending motion on November 3, 2010.  In support of his motion, petitioner raises the following 23 grounds for relief:

> 1.   Petitioner should have been allowed to present a justification defense and should have been allowed his counsel of choice to help present that defense;
>
> 2.   Appellate counsel failed to argue that petitioner was entitled to a justification defense and to his counsel of choice;
>
> 3.   Appellate counsel failed to argue that Barket was wrongfully disqualified;
>
> 4.   Trial counsel appointed for sentencing failed to argue that the jury verdict was not unanimous;

5.  Appellate counsel failed to argue the ineffective assistance of trial counsel regarding the jury verdict;

6.  Appellate counsel failed to argue the equal protection argument that a similarly situated defendant would have been allowed a justification defense;

7.  Appellate counsel failed to argue the fraudulent nature of the "shooter's view" photograph of Dr. Slepian's house;

8.  Appellate counsel failed to argue that petitioner was prejudiced by improper suppression of an exculpatory autopsy diagram;

9.  Appellate counsel failed to argue that respondent improperly asked the jury to infer intent to kill on the basis of false evidence;

10. Appellate counsel failed to argue that petitioner's due process rights were violated when he was prohibited from submitting evidence that would support a lesser included offense to murder;

11. Appellate counsel failed to argue that petitioner was entitled to a justification defense because 18 U.S.C. § 248 is unconstitutional or a legal nullity;

12. Appellate counsel failed to argue additional reasons why petitioner's statements should have been suppressed;

13.   Appellate counsel failed to argue that petitioner was prejudiced by a tardy ruling on a motion in limine by respondent to redact statements that petitioner made to the media;

14.   Appellate counsel failed to argue that petitioner was deprived of legal research and investigative resources that would have supported his justification defense;

15.   Trial counsel failed to argue that the Court should have recused itself because it presided over prior cases involving abortion protesters;

16.   Appellate counsel also failed to argue the recusal issue;

17.   Repeating the 14th ground, appellate counsel failed to argue the need for research supporting the justification defense;

18.   Trial counsel failed to move to disqualify the particular prosecutors on the case as potential witnesses in any hearing that would have been necessary regarding this Court's recusal;

19.   Repeating the 18th ground, appellate counsel failed to argue about the need to disqualify prosecutors;

20.   Petitioner was denied his right to trial counsel when he was pressured to proceed *pro se* prematurely;

21.   Appellate counsel failed to argue that petitioner was pressured to proceed *pro se* prematurely;

22.   Petitioner's Fifth Amendment rights were violated when he was pressured to make statements to the media under threat of a more extensive prosecution of Marra; and

23.   Appellate counsel failed to argue the Fifth Amendment violation noted in petitioner's twenty-second ground.

Respondent opposes petitioner's by noting that, whether verbatim or in substance, nearly all 23 grounds for relief match points that petitioner raised on direct appeal and that the Second Circuit rejected already. The few arguments that do not, according to respondent, are so conclusory as to be meritless.

## III.   DISCUSSION

### A.   *Section 2255 Generally*

To prevail on his motion, petitioner must demonstrate that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). For the specific issue of ineffective assistance of counsel, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The

10

court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

As for petitioner's papers, "the Court is mindful that Plaintiff[] [is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers.  Moreover, when plaintiffs bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).

The Court will assess the pending motion in this context.

**B.    *Issues Raised on Direct Appeal***

Upon reviewing the grounds for relief that petitioner has submitted in his motion, the Court notes that all of them either repeat verbatim or at least relate to arguments that the Second Circuit already considered on direct appeal.  "The law

11

of the case ordinarily forecloses relitigation of issues expressly or impliedly decided by the appellate court.  Applying this general principle, we have held that section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.  Nevertheless, application of the doctrine remains a matter of discretion, not jurisdiction.  We may find it appropriate to reconsider an earlier decision when we are confronted with an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *U.S. v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (internal quotation marks and citations omitted).

Petitioner has failed to raise new arguments that would be before the Court properly on a Section 2255 motion.  The Second Circuit already rejected petitioner's arguments about his suppression motion and about redaction of his statements.  The Second Circuit already held that the plain language of 18 U.S.C. § 248 makes irrelevant all of petitioner's arguments regarding lesser included offenses and his lack of intent to kill.  Additionally, the Second Circuit already stated in its April 2009 decision that it considered a number of petitioner's other arguments, including his argument about his right to counsel of choice, and found them unworthy of discussion.  Finally, and perhaps most importantly for petitioner's motion, the Second Circuit  already ruled explicitly that petitioner was not entitled to a justification defense.  This ruling is particularly important because, in one way or another, all of petitioner's arguments appear to be driven

by a resentment that he was not allowed to turn his trial into a showcase for his ideology.  Absent a showing of new evidence or clear error, however, this Court does not need to revisit petitioner's persistent and overlapping arguments to turn his case into something other than a straightforward prosecution under the plain language of 18 U.S.C. § 248.  This Court also will not fault appellate counsel for a failure to raise any argument that the Second Circuit wound up rejecting but allowed petitioner to make anyway, through his own *pro se* briefing.  "Failure to make a meritless argument does not amount to ineffective assistance."  *U.S. v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (citation omitted), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 n.8 (2003).

The doctrine of the law of the case has its most important effect on petitioner's arguments concerning the disqualification of Barket.  As noted above, the Court disqualified Barket before trial because his attempts to juggle petitioner's and Marra's competing interests significantly altered the courses of action that they took in their respective cases.  Petitioner now has not presented any new information that warrants disturbing that prior finding.   Instead, the sole force driving petitioner's argument that he was deprived of his right to Barket's counsel is his desire for a justification defense, which Barket was willing to present.  The Second Circuit's ruling on the issue of justification, however,

combined with its refusal to discuss the right to counsel of choice, provides an additional reason to leave the Court's prior ruling on disqualification undisturbed.

To the extent that the last six grounds in petitioner's motion do, in fact, raise novel arguments, the Court finds that they are too conclusory in nature and that they relate to substantive issues that could have been raised on direct appeal. *See U.S. v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) ("A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must show that there was cause for failing to raise the issue, and prejudice resulting therefrom.") (internal quotation marks and citations omitted).

## IV.    CONCLUSION

For all of the foregoing reasons, the Court denies petitioner's motion (Dkt. No. 385) to vacate his sentence.  The Clerk of the Court is directed to close the civil case associated with the pending motion (Case No. 10-CV-871).

In addition, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and accordingly the Court denies a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. U.S.*, 369 U.S. 438 (1962).

14

Petitioner will have 30 days from entry of judgment to file any notice of appeal with the Clerk of this Court.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 27, 2011